[No. 16668. Department Two. December 22, 1921.]

SILER MILL COMPANY, *Appellant,* v. UNITED STATES SPRUCE PRODUCTION CORPORATION, *Respondent.*[1]

UNITED STATES—WAR CONTRACT—CONSTRUCTION—DURATION.   Under a contract between the government and a mill company on a 1917 form, reciting commencement of delivery in November, 1917, but which was not signed until April 1, 1918, calling for the delivery of spruce lumber for a period of eighteen months, the mill company is entitled to damages for its cancellation by the government in November, 1918.

SAME—WAR CONTRACT—CONSTRUCTION—SUBJECT-MATTER—QUANTITY.   Under the provisions of a war contract for the delivery of spruce lumber to the government for a period of eighteen months at the rate of "about 250,000 feet or more of said spruce during each month," the contract called for a delivery of 4,500,000 feet and not the entire output of the mill; and where it was cancelled after delivery of 3,915,120 feet the government was liable for the profit that could have been made on the balance of the lumber.

Appeal from a judgment of the superior court for Clarke county, Back, J., entered December 22, 1920, upon findings in favor of the defendant, in an action on contract, tried to the court.   Reversed.

[1]Reported in 203 Pac. 6.

*Shank, Belt & Fairbrook,* for appellant.

*Carey & Kerr, Omar C. Spencer,* and *A. L. Miller,* for respondent.

MACKINTOSH, J.—A contract was entered into between the appellant and the United States government for the production of spruce lumber, to be used during the world war in the manufacture of airplanes. This contract was subsequently assigned to the United States Spruce Production Corporation, a corporation organized under the laws of the state of Washington. The parties hereto having waived the question of the jurisdiction of the courts of this state over the respondent, and we being satisfied that we have such jurisdiction, only the question of the interpretation of the contract is presented.

So far as material, the contract is as follows:

"Signal Corps United States Army,
"Contract No. SPD—144,
"Order No. ——
"Proposal No. ——
"Req. No. ——
"Contract for Spruce Lumber.

"These articles of agreement, entered into this first day of April, 1918, by and between Siler Mill Co., a corporation organized under the laws of Washington and located at Raymond, Washington, hereinafter called the 'Seller' and the United States of America, hereinafter called the 'Government,' represented by J. Van D. Crisp, 1st Lieut. Signal Corps, of the United States Army, hereinafter called the 'contracting officer' and under the directions of the Secretary of War, witnesseth:

"Whereas, Congress having declared by joint resolution, approved April 6, 1917, that war exists between the United States of America and the Imperial German Government, constituting a national emergency, and

"Whereas, on September 7, 1917, under the provi-

sions of Section 120 of an Act of Congress relating to national defense, approved June 3, 1916, the president, acting through the Secretary of War, commanded that all orders placed with the Seller by the Equipment Division of the Signal Corps be fulfilled and required that said Seller proceed with all possible haste with the production of spruce lumber for the manufacture of airplanes in accordance therewith, and with the further requirement that the Seller give preference to such orders over all other orders and contracts of said Seller:

"Now, therefore, under the provisions of said Section 120 of an Act of Congress relating to national defense, approved June 3, 1916, and in accordance with the foregoing command, the President hereby places an order with the Seller with the requirement that it comply with the contract hereinafter set forth, and in consideration of the mutual agreements herein contained, the parties hereto have agreed and by these presents do agree to and with each other as follows:

"Article I. The Seller hereby sells to the Government and the Government hereby purchases from the Seller, in accordance with the terms and conditions hereinafter set forth, four and one-half million feet of spruce lumber within the period of eighteen months next ensuing which shall conform in all respects to the requirements and provisions of Standard Specifications No. 1 hereto attached, or such modification thereof as the Government shall hereafter from time to time adopt.

"Art. II. The Seller agrees to deliver about 250,-000 feet or more of said spruce, during each month, commencing with the month of November, 1917, and continuing until the expiration of this contract. Time is of the essence of this agreement, and in the event that for any reason deliveries in any months shall be less than about 250,000 feet, board feet, the Government may elect not to accept any deficiency, but if such election be not made in writing, delivered to the Seller within ten (10) days after the end of the month in which any such deficiency occurs, the deficient amount shall be delivered in the next succeeding months. . . .

"Art. III. Deliveries of said spruce shall be made by the Seller to the Government free on board cars at the mill of production, but if the Government shall notify the Seller within a reasonable time in advance of its intention . . . .

"Art. IV. All said spruce lumber to be delivered under this contract shall be inspected at the time of delivery as to compliance with the specifications hereto attached, or such modification thereof as the Government shall adopt, and as to measurement, at the mill of Seller by inspectors authorized by the Government, which inspection shall be final. The Government hereby reserves the right to refuse and to mark the letters 'C. S.' in crayon on any spruce lumber found on such inspection not to be in compliance with specifications hereto attached, or such modification thereof as the Government shall adopt . . . .

"Art. V. The price to be paid for such spruce lumber to the Seller by the Government shall be One Hundred and Five and No/100 Dollars ($105) per one thousand (1,000) board feet, based on measurements noted in specifications hereto attached, or such modification as the Government shall adopt . . . .

"Art. IX. It is further contracted and agreed that the Seller shall saw, manufacture and deliver the lumber herein contracted to be delivered in a good and workmanlike manner and to the satisfaction of the Government. And if at any time the Government should determine that the Seller is not complying with this clause of the contract, the Government may at once terminate this contract and decline to receive any more lumber from the Seller."

Upon the cessation of hostilities the respondent cancelled the contract, and this action is brought for damages suffered by reason of such cancellation.

The first contention of the appellant is that the contract is one dating from April 1, 1918, and to extend for a period of eighteen months thereafter; and secondly, that the contract called for the entire output of

the respondent's mill, and was not a contract for merely 4,500,000 feet of spruce. The testimony shows that the appellant was engaged in the manufacture of lumber, and that sometime in the year of 1917, it being then engaged in the production of spruce for the Allies, ceased such production and entered into an arrangement with the United States government to transfer the spruce to it; that the United States government was bending every effort to increase the spruce production, as it appeared that the success of the war might largely depend upon the rapid manufacture of airplanes. About November, 1917, there was sent out to the mills manufacturing spruce printed contracts, a part of one of which is hereinbefore set forth, bearing date of November 1, 1917. This contract was held by the appellant until sometime in March, when it was signed by appellant, and the date of the contract as it appeared in the first line thereof was changed to the 1st of April, 1918, and was approved on March 30 by the government. The date of November, 1917, as it appears in article II remained as it originally appeared. It is to be remembered that, up until the actual signing of this contract, the appellant was furnishing spruce under the arrangement made the preceding summer.

After the making of this contract, the appellant proceeded to carry it out, and in doing so increased the output of its mill, purchased at high prices additional spruce, and did everything that was necessary to comply with the contract, and everything that would be advantageous to the interest of the government in securing the greatest amount of spruce production possible. By the time the contract was cancelled, the appellant was in position to deliver a great deal more than 250,000 feet of spruce per month, and the appellant is claiming damages based upon what it would

have been able to deliver, running at full capacity during the remaining portion of the eighteen months, after the cancellation in November, 1918.

From the 1st of April, 1918, to the time of cancellation the appellant had delivered about 3,915,120 feet of spruce, as appears by its claim filed December 27, 1918, with the Spruce Production Division.

(1) Reading the contract so as to give full effect to all its provisions, and taking into consideration the circumstances under which it was executed, we are clearly of the view that it was a contract calling for the delivery of spruce for a period of eighteen months, following April 1, 1918.

(2) It is equally clear that the contract is one for 4,500,000 feet of spruce lumber only. It therefore follows that, upon cancellation, the appellant was entitled to such damages as flowed from a failure of the respondent to take the additional 584,880 feet.

The testimony establishes that there would have been a profit to the appellant of $43 per thousand feet on this contract. The appellant was, therefore, entitled to a judgment for $25,149.84, and the action of the trial court in failing to find for the appellant is reversed, with directions to enter a judgment for the above amount.

PARKER, C. J., MAIN, HOLCOMB, and HOVEY, JJ., concur.